UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 18-20095 (JJT) |
| | ) | | |
| FERNANDO P. RODRIGUES, | ) | CHAPTER | 7 |
|     DEBTOR. | ) | | |
| | ) | ADV. PRO. NO. | 18-02016 (JJT) |
| STEVEN TEMKIN and, | ) | | |
| GAYLE TEMKIN | ) | | |
|     PLAINTIFFS | ) | RE: ECF NOS. | 1, 15, 45 |
| V. | ) | | |
| | ) | | |
| FERNANDO P. RODRIGUES, | ) | | |
|     DEFENDANT. | ) | | |
| | ) | | |

**APPEARANCES**

David M. S. Shaiken, Esq.                                                Attorney for the Plaintiffs
Shipman, Shaiken & Schwefel, LLC
433 South Main Street, Suite 319
West Hartford, CT 06110

George I. Roumeliotis, Esq.                                          Attorney for the Debtor/Defendant
Roumeliotis Law Group, P.C.
157 Church Street, 19th Floor
New Haven, CT 06510

**POST-TRIAL MEMORANDUM OF**
**DECISION REGARDING NONDISCHARGEABLE DEBT**

    I.      INTRODUCTION

The Plaintiffs, Steven Temkin and Gayle Temkin, filed their complaint ("Complaint," ECF No. 1) against the Defendant, Fernando P. Rodrigues ("Debtor"), on May 3, 2018. In the Complaint, the Plaintiffs asks this Court, pursuant to 11 U.S.C. § 523(a)(6),[1] to deem

---

[1] Section 523(a)(6) excepts from discharge any debt arising from "willful and malicious injury by the debtor to another entity." 11 U.S.C. § 523(a)(6).

nondischargeable a debt based on a state court judgment ("Judgment") that the Debtor owes to them.[2]

## II. BACKGROUND AND PROCEDURAL HISTORY

On January 24, 2018, the Debtor filed a voluntary petition in this Court seeking relief under Chapter 7 of the U.S. Bankruptcy Code (Case No. 18-20095). Included in the Debtor's schedule of assets and liabilities was the aforementioned Judgment in favor of the Plaintiffs (ECF No. 13, 20). On July 02, 2018, the Plaintiffs filed a timely proof of claim with this Court, and on May 3, 2018, they initiated this adversary proceeding, arguing that the Judgment debt was nondischargeable because the Debtor's conduct giving rise to the Judgment fell within the meaning of "malicious and willful" conduct under § 523(a)(6) (Adv. Pro. No. 18-02016). On July 6, 2018, in a one-page answer, the Defendant denied all allegations of the Complaint and argued as a special defense that the Judgment was improperly decided, and that any determination as to the dischargability of the Judgment debt would be premature while the appeal was pending ("Debtor's Answer," ECF No. 15).[3]

On May 1, 2019, the Defendant filed pre-trial disclosures consisting of proposed witnesses and exhibits. The disclosures indicated that the Debtor intended to call, among others, the Plaintiffs as witnesses, and would offer certain papers relating to the State Court litigation and subsequent appeal as evidence (ECF No. 27). The Plaintiffs filed a Motion in Limine and Objection to Defendant's Rule 26(A)(3) Disclosure ("Plaintiffs' Motion in Limine," ECF No. 28) arguing that the Defendant was collaterally estopped from offering evidence relating to issues already fully and fairly litigated in State Court. On June 4, 2019, the Court granted the Plaintiffs'

---

[2] For purposes of mutuality, that the Debtor in the present action is one and the same as the Defendant in the subject State Court proceeding referenced herein.

[3] By the time of trial, the Debtor's appeal of the Judgment had been dismissed and was assigned a final disposition number by the Superior Court. Accordingly, this defense was not cognizable.

Motion in Limine in part and sustained their Objection to Defendant's Rule 26(a)(3) Disclosures in part, (see ECF No. 39) primarily due to the preclusive effect of the State Court decision as to matters relevant to this Court's consideration of whether the Judgment debt was nondischargeable under § 523(a)(6).

III. JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1334(b) and may hear and determine this matter pursuant to the District Court's General Order of Reference dated September 21, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. § 1409(a).

IV. FINDINGS OF FACT

In accordance with Fed. R. Civ. P. 52 and Fed. R. Bankr. P. 7052, after notice and a hearing and the Court's consideration of the record, the Court makes the following findings of facts in addition to those in the Introduction:

**Background**

1. The litigation between these parties originates with a prior proceeding in State Court, on or about October 19, 2011, that arose out of dispute between neighbors.[4] In the preceding years, the owner of the undeveloped property adjacent to the Plaintiffs' property employed the Debtor to develop the lot. In the course of that employment, the Debtor developed an adversarial relationship with the Plaintiffs.

2. In the State Court proceeding, the Plaintiffs filed a cross claim ("Cross Claim") wherein they alleged three separate causes of action against the Debtor and an LLC, of which the Debtor

---

[4] See *Givens Avenue Partners, LLC v. Temkins*, No. HHD-CV-11-6026282-S, 2017 WL 3011702 (Conn. Super. Ct. June 7, 2017). See also *Temkin v. Givens Avenue Partners, LLC*, No. X07-HHD-CV-15-5040137-S, 2019 WL 1932350 (Conn. Super. Ct. Apr. 8, 2019).

was the sole member, that sounded in private nuisance, negligent infliction of emotional distress and intentional infliction of emotional distress respectively (Pl's Ex. E, 4–6).

3. The Cross Claim stated that the Debtor intentionally imported landscaping fill onto the adjacent property, and thereafter piled it on or near the property line as to obscure the Plaintiffs' view of the Hartford skyline (Id.).

4. The Cross Claim also stated that the Debtor engaged in a course of harassing behavior that included, but was not limited to: (1) standing on the Plaintiffs' property line for extended periods of time, while staring into their home or backyard where their children played; (2) openly photographing the Plaintiffs, their children, and their home from the adjacent property; (3) following the Plaintiffs in his vehicle as they came and went from their home, sometimes purposefully obstructing their way; and (4) saying to the Plaintiffs in a threatening manner on at least one occasion that he would "finish [them] off" and that he would "take care" of them (Id., 3, 5).

### The State Court's Findings

5. On June 7, 2017, after a bench trial, the State Court, *Epstein J.*, issued a memorandum of decision (Pl's Ex. A) adjudging that the Debtor and the LLC were both liable under all three causes of action. The State Court further concluded that the Debtor's actions "were malicious, knowing and intentional, and caused significant distress that continue[d] to persist," and "parallel[ed] the definition of stalking in the criminal statutes . . . when one follows, lies in wait for, monitors, observes, surveils, threatens, or harasses another person and/or interferes with a person's property" (Id., 19).

6. The State Court found, inter alia, the following additional relevant facts: The Debtor engaged in piling fill on the Plaintiffs' property line on multiple occasions, which consisted not only

of dirt, but also large amounts of "tree branches, rocks, pieces of broken concrete, garbage, bottles, and trash bags," which were so high at one point, a person could stand on top of a pile and look directly into the third floor of the Plaintiffs' home (Id., 9, 11).

7. The piles of fill became so high that they fell onto the Plaintiffs' property and against their newly built home, forcing them to install frames in front of their basement windows to prevent damage (Id., 9).

8. The Debtor regularly parked bulldozers, dump trucks, and other vehicles on or near the property line for no apparent reason (Id., 11).

9. The Debtor would stand on top of the piles of fill, with his arms folded, starring directly into the Plaintiffs' home for long periods of time (Id.).

10. The State Court further concluded that both "cross-claim defendants [(Debtor and the LLC )] [were] liable under all three causes of action," (Id.) and awarded the Plaintiffs $150,000 for the private nuisance claim, $500,000 for emotional distress, and punitive damages in the form of attorney's fees (Id., 20).

**Post Judgment**

11. On June 27, 2017, the Defendant appealed the State Court's decision; and on January 24, 2018, the Debtor filed a voluntary Chapter 7 Bankruptcy Petition in this Court (Case No. 18-20095).

12. On May 3, 2018, the Plaintiffs commenced this Adversary Proceeding against the Debtor (Adv. Pro. No. 18-02016).

13. The State Court appeal was dismissed on February 1, 2019 (Pl's Ex. C); and on March 20, 2019, after the last remaining issues before the State Court was withdrawn by the Plaintiffs,[5] the case was removed from the docket and assigned it final disposition number (Pl's Ex. D).

V.    DISCUSSION

In the Complaint (ECF No. 1) the Plaintiffs argue that they have proven by a preponderance of the evidence that the Debtor's conduct that gave rise to the Judgment debt constituted malicious and willful conduct under § 523(a)(6), and, therefore, is a nondischargeable. In response, the Defendant essentially argues that: (1) the Judgment's apportionment of liability between the respective the Debtor and the LLC was unclear; and (2) a thorough review of the State Court proceedings would better help this Court in determining how much of the underlying conduct was malicious and willful, as opposed to merely negligent, and thus aid the Court in its determination of whether a portion of the Judgment was, in fact, dischargeable under § 523(a)(6).[6] For the reasons stated herein, the Court agrees with the Plaintiffs.

    A.  Res Judicata and Collateral Estoppel

"[A] federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *O'Connor v. Pierson*, 568 F.3d 64, 69 (2d Cir.2009) (alteration in original) (quoting *Migra v. Warren City*

---

[5] According to the State Court's final Order disposing of the case, the Plaintiffs' withdrew their motion for Attorney's fees.  (Pl's Ex. D)

[6] Although the Defendant failed to file a pre-trial brief rebutting that of the Plaintiffs', it is the Court understanding that the Debtor continues to maintain the position presented in his Objection to the Plaintiff's Motion in Limine, namely, that the Judgment was inconclusive as to certain facts relevant to this Court's consideration of whether the Judgment debt is dischargeable under § 523(a)(6) (see ECF No. 35). These arguments, however, were squarely addressed in the Court's Ruling on the Plaintiffs' Motion in Limine (see ECF No. 39). Because the language in the Judgment clearly attributed liability to both co-defendants concurrently for all three causes of action the Debtor's apportionment argument is without merit.

*Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). Under both Connecticut and federal law, the doctrine of res judicata provides that "a final judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim." *Dontigney v. Roberts*, 73 Conn. App. 709, 710 (2002); *Mazziotti v. Allstate Ins. Co.*, 240 Conn. 799, 812 (1997). "This doctrine means that once a case reaches a final judgment on the merits, the parties cannot later relitigate the issues that were raised or could have been raised in that earlier case." *Vandever v. Emmanuel*, 606 F.Supp.2d 253, 254 (D. Conn. 2009). See also *Chien v. Skystar Bio Pharmaceutical Co.*, 623 F.Supp.2d 255, 260 (D. Conn. 2009) (Res judicata "bars not only those claims or legal theories that were asserted in the prior action, but also those legal claims or theories that could have been asserted, regardless whether they were in fact raised by the parties, so long as they arise from the same transaction that formed the basis of the prior action.") (internal quotation marks and citations omitted).

Furthermore, the doctrine of "collateral estoppel precludes a party from relitigating *issues and facts* actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim." *Mazziotti v. Allstate Ins. Co.*, 240 Conn. 799, 812 (1997) (emphasis added) (citations and internal quotation marks omitted). An issue is subject to collateral estoppel when it satisfies the following elements: (1) it was fully and fairly litigated in the first action; (2) it was actually decided; and (3) the decision was necessary to the judgment. *Lighthouse Landings, Inc. v. Connecticut Light & Power Co.*, 300 Conn. 325, 344 (2011). "An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered." *Lafayette v. General Dynamics Corp.*, 255 Conn. 762 (2001) (citations and emphases omitted). Moreover,

"[u]nder Connecticut law, [t]here is no prevailing definition privity to be followed automatically in every case. . . . A court 'focuses on the functional relationships of the parties.'" *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 33–34 (2d Cir. 2017). This Court is satisfied that these tests have been resoundingly met upon its review of the State Court pleadings, docket and rulings.

    B.  Dischargeability Under 11 U.S.C. § 523(a)(6)

"To succeed on a § 523(a)(6) claim, a plaintiff must prove: (1) the debtor acted willfully; (2) the debtor acted maliciously; and (3) the "debtor's willful and malicious actions caused injury to the plaintiff or the plaintiff's property." *Salvatore v. Salvatore (In re Salvatore)*, 586 B.R. 371, 377 (Bankr. D. Conn. 2018) (citing *In re Powell*, 567 B.R. 429, 434 (Bankr. N.D.N.Y. 2017)).

"While neither 'willful' nor 'malicious' conduct is defined by the Bankruptcy Code, the United States Supreme Court has clarified that § 523(a)(6) renders non-dischargeable 'only acts done with actual intent to cause injury,' not merely 'acts, done intentionally, that cause injury.'" *Hamrah v. Couloute (In re Couloute)*, 538 B.R. 184, 190 (Bankr. D. Conn. 2015) (citing *Kawaauhau v. Geiger*, 523 U.S. 57 (1998)). "[T]he Second Circuit has defined and interpreted 'malicious' as meaning 'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.'" *3N Int'l, Inc. v. Carrano (In re Carrano)*, 530 B.R. 540, 559 (Bankr. D. Conn 2015) (quoting *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87–88 (2d Cir. 1996)). In essence, this provision "contemplates injury analogous to an intentional tort." *Orr v. Marcella (In re Marcella)*, 463 B.R. 212, 219 (Bankr. D. Conn. 2011); *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir. 1996). To prevail on a nondischargeability claim under 11 U.S.C. § 523(a)(6), the Plaintiffs' burden is to prove all elements of each asserted claim for relief by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287–88 (1991).

C. The State Court Judgment

Under Connecticut law, in order to prevail in a case alleging intentional infliction of emotional distress, a party must establish: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; 2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Perez-Dickson v. City of Bridgeport*, 304 Conn. 483, 526–27 (2012). In order to prevail on a private nuisance claim, a party must show that: "(1) there was an invasion of the plaintiff's use and enjoyment of his or her property; (2) the defendant's conduct was the proximate cause of the invasion; and (3) the invasion was either intentional and unreasonable, or unintentional and the defendant's conduct was negligent or reckless." *Pestey v. Cushman*, 259 Conn. 345, 358, 788 A.2d 496, 506 (2002).

Because the Plaintiffs properly pleaded and litigated the issue of whether the Debtor *intentionally inflicted emotional distress* on the plaintiffs, in addition to whether he *intended to prevent the Plaintiffs from the use and enjoyment of their property*, this Court concludes that these issues were both fully and fairly litigated in State Court. Because the State Court made distinct determinations as to both issues, they were also *actually* decided. Moreover, given that the State Court's determination that the defendant's conduct "[was] malicious, knowing and intentional, and caused significant distress that continue[d] to persist[]" was necessary to its conclusion that the Debtor was liable for *intentional* infliction of emotion distress and for *intentionally* depriving the Plaintiffs of their use and enjoyment of their property, the State Court's conclusion was necessary to the Judgment.

9

Because a successful § 523(a)(6) claim must prove acts done with actual intent to cause injury, acts akin to an intentional tort, for the purposes of collateral estoppel, the issues presently before this Court are sufficiently comparable in substance to those issues that were adjudicated in the State Court. *See Montana v. United States*, 440 U.S. 147, 155 (1979) (collateral estoppel applies to issue that are *in substance* the same as those previously resolved). Nothing that has been properly presented to this Court indicates any compelling reason to think otherwise. Accordingly, the Debtor is collaterally estopped from challenging whether the conduct was "willful and malicious" under § 523(a)(6).

VI.   CONCLUSION

The issues pertaining to the Judgment were fully litigated and actually and necessarily decided in the State Court. Those issues are so closely related to the § 523(a)(6) issue now before this Court that the State Court's determination that Debtor's conduct was "malicious, knowing and intentional," meets all the essential elements of a cause of action for nondischargeability under 11 U.S.C. § 523(a)(6) by a preponderance of the evidence. The Plaintiffs are therefore entitled to a determination, as a matter of law, that the debt owed in connection the Judgment is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

Accordingly, it is hereby **ORDERED, ADJUDGED AND DECREED**:

That, pursuant to 11 U.S.C. § 523(a)(6), the $650,000.00 Judgment debt owed to the Plaintiffs by the Debtor constitutes a **NONDISCHARGEABLE** debt; and

To the extent that the Plaintiffs are seeking additional relief in the form of attorney's fees and costs, they are to file a motion with the Court, pursuant to the Fed. R. of Bankr. P. 7054, within 21 days of this Post-Trial Memorandum of Decision seeking such relief; and

That the Clerk for the United States Bankruptcy Court shall issue and docket a separate judgment consistent with this Decision.[7]

**IT IS SO ORDERED** at Hartford, Connecticut this 13th day of September 2019.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut

---

[7] Consistent with this Post-Trial Memorandum of Decision, the judgment will be entered and docketed after the issue of attorney's fees and costs has been adjudicated by the Court or waived.